UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| **HORTANSIA D. LOTHRIDGE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:22-cv-00172-SLC |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** *sued as Kilolo Kijakazi,* | ) | |
| *Acting Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Hortansia D. Lothridge appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case REMANDED to the Commissioner.

## I. FACTUAL AND PROCEDURAL HISTORY

Lothridge applied for DIB and SSI in May 2013, alleging disability as of December 14, 2009. (ECF 13 Administrative Record ("AR") 32, 215-30).[1] Lothridge was last insured for DIB on December 31, 2014 (AR 2044), and thus with respect to her DIB application, she must establish that she was disabled by that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled by her date last

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

insured in order to recover DIB).[2]

Lothridge's claim was denied initially and upon reconsideration. (AR 152, 156, 164, 168). On June 24, 2015, an administrative law judge ("ALJ") conducted an administrative hearing (AR 51-104), and on September 1, 2015, rendered an unfavorable decision to Lothridge, concluding that she was not disabled because, despite the limitations caused by her impairments, she could perform a significant number of unskilled, light-exertional jobs in the national economy (AR 32-45). The Appeals Council denied Lothridge's request for review (AR 9-14), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Lothridge filed a complaint with this Court, which subsequently reversed the Commissioner's decision and remanded the case for further proceedings. (AR 787-804).

On remand, the same ALJ held a new hearing and issued a second unfavorable decision on October 30, 2018. (AR 672-93, 713-58). Lothridge again filed a complaint with this Court, which affirmed the Commissioner's decision. *Lothridge v. Comm'r of Soc. Sec.*, No. 1:19-cv-00067-JVB (N.D. Ind. Dec. 19, 2019). Lothridge appealed the unfavorable decision to the Seventh Circuit Court of Appeals, who reversed the decision and remanded the case for further proceedings. (AR 1869-84); *see Lothridge v. Saul*, 984 F.3d 1227 (7th Cir. 2021).

While that appeal was pending, Lothridge filed a second application for DIB and SSI in March 2019. (AR 2013-25). These second applications were denied as well. (AR 1941-48). In the Appeals Council's remand order following reversal by the Seventh Circuit, the Appeals Council directed a new ALJ to consolidate the original applications with the second applications.

---

[2] Regardless of a claimant's claimed onset date, SSI is not payable until the month following the month in which a claimant files her SSI application. *See* 20 C.F.R. § 416.335. Therefore, the first month Lothridge could be eligible to receive SSI is June 2013, given that she applied for SSI in May 2013.

2

(AR 1891-92).

On October 26, 2021, a ALJ William Pierson held a hearing, taking testimony from Lothridge, who was represented by counsel; a witness, Lothridge's daughter; and a vocational expert. (AR 1726-90). On January 26, 2022, the ALJ issued a decision finding that Lothridge, again, was not disabled. (AR 1689-1716). This decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984, 416.1484.

On May 20, 2022, Lothridge filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). In her opening brief, Lothridge argues that the ALJ erred by: (1) failing to consider Lothridge's obesity, and (2) relying on unreliable testimony from the vocational expert at step five. (ECF 20 at 5).

As of the ALJ's January 26, 2022, decision, Lothridge was forty-one years old (AR 1733, 2013); had an eleventh grade education, which included some special education classes (AR 2049); and had past relevant work as a certified nursing assistant (AR 1713, 1777), as well as other work experience as a day care attendant, retail cashier, and telemarketer (*see* AR 2050). In her most recent application, Lothridge alleged disability due to arthritis, fibromyalgia, asthma, depression, post traumatic stress disorder (PTSD), anxiety, panic attacks, endometriosis, fibroids in uterus, muscle spasms, lazy eyes, herniated disc in back, high cholesterol, high blood pressure, and a thyroid problem. (AR 2048).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by

substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process,

requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920.³ "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The Commissioner's Final Decision

In the ALJ's January 26, 2022, decision, which became the final decision of the Commissioner, the ALJ observed at the outset that Lothridge last met the insured status requirements for DIB on December 31, 2014. (AR 1692). At step one of the five-step analysis, the ALJ noted that while Lothridge had worked after her alleged onset date of December 14, 2009, such work did not rise to the level of substantial gainful activity. (AR 1692-93). At step two, the ALJ found that Lothridge had the following severe impairments: fibromyalgia; myalgias/arthralgias; chronic obstructive pulmonary disease (COPD); mild and low-grade degenerative changes of the cervical, thoracic, and lumbar spines; asthma; bipolar I disorder;

---

³ Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* §§ 404.1520(e), 416.920(e).

5

PTSD; mood disorder; anxiety disorder; obsessive compulsive disorder; and attention deficit hyperactivity disorder. (AR 1693). At step three, the ALJ concluded that Lothridge did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

The ALJ assigned Lothridge the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except should not climb ropes, ladders or scaffolds. The claimant can occasionally kneel, crouch, and crawl. The claimant can occasionally bend and stoop in addition to what is required to sit. The claimant can occasionally use ramps and stairs. Aside from use of ramps and stairs on an occasional basis, the claimant should avoid working upon uneven surfaces. The claimant should avoid working upon wet and slippery surfaces. The claimant can perform the balance required of such activities. The claimant should avoid work within close proximity to open and exposed heights and open and dangerous machinery such as open flames and fast-moving exposed blades. The claimant should avoid work involving concentrated exposure to vibration such as using heavy sanders. The claimant is limited from concentrated exposure to excessive airborne particulate, dusts, fumes and gases and excessive heat, humidity and cold such as when working outside or within a sawmill, boiler room, chemical plant, green house, refrigerator unit or sewage plant. The claimant should avoid complex tasks but can perform simple, routine tasks and instructions throughout the work day. The tasks contemplated are SVP 1 and 2 type tasks that can be learned within a short period through short demonstration, or when beyond short demonstration, within up to 30 days. The tasks may be as simple and mundane of a task such as taking and packing the same item all day every day, or a task that is simple in nature but completed before moving to the next task, such as picking up one item, inspecting it for a flaw-such as a bur, and placing it into piles or boxes all day every day. Essentially, the type of tasks remain the same from day to day. The claimant can engage in the superficial interaction with supervisors and coworkers in a manner consistent with SVP 1 and 2 type tasks in which prolonged and intense conversation is not necessary for task completion. The work should not involve interaction with the public. Casual and occasional conversation can take place with coworkers and supervisors as well if the claimant so desires and if the employer allows. Work places changes should be gradual and expected. The claimant can respond or adapt to the changes, cope with the stress and engage in the decision making required of such tasks. With such limitations in place, the claimant can then maintain the concentration, persistence, adaptation and even the pace required of such tasks for two-hour increments, and for eight hour work days-within the confines of normal work place breaks and lunches-on a sustained day to day basis.

(AR 1696-97 (bold emphasis omitted)).

The ALJ determined at step four that given the foregoing RFC, Lothridge could not perform her past relevant work as a certified nursing assistant. (AR 1713). However, at step five the ALJ found that Lothridge could perform a significant number of unskilled, light-exertional jobs in the national economy, including inspector hand packager, merchandise marker, and office helper, as well as a significant number of unskilled, sedentary jobs, including small parts sorter, assembler, and inspector. (AR 1714). Therefore, Lothridge's applications for DIB and SSI were denied. (AR 1715).

### C. Obesity

Lothridge argues that a remand is required because the ALJ failed to consider her obesity and its effect in combination with her other impairments when assessing her claim and assigning the RFC. Lothridge's argument is persuasive.

Social Security Ruling (SSR) 19-2p provides guidance on how the Commissioner evaluates obesity, explaining that the Commissioner "consider[s] the person to have [a medically determinable impairment (MDI)] of obesity as long as his or her weight, measured waist size, or [mass body index (BMI)] shows a consistent pattern of obesity." 2019 WL 2374244, at *3 (May 20, 2019).[4] "[O]besity is defined as a BMI of 30.0 or higher." *Id.* at *2 (footnotes omitted). "Obesity is not a listed impairment; however, the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing." *Id.* at *4 (footnote omitted). Further, "[the ALJ] must consider the limiting effects of obesity when

---

[4] Per its terms, SSR 19-2p applies to Lothridge's claim even though her disability applications were filed before its May 20, 2019, effective date. *Id.* at *5 n.14 ("We will apply this SSR to new applications filed on or after the applicable date of the SSR *and to claims that are pending on and after the applicable date.*" (emphasis added)); (*see* AR 32, 215-30).

assessing a person's RFC." *Id.* (footnote omitted). "The combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." *Id.* "For example, someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person would have due to the arthritis alone." *Id.* "As with any other impairment, [the ALJ] will explain how [he] reached [his] conclusion on whether obesity causes any limitations." *Id.*

As to the RFC, it is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (footnote omitted); *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citations omitted). "The ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019).

Here, the record is riddled with a consistent pattern of Lothridge's obesity evidenced through her BMI readings: 40.7 in 2021 (AR 1798), 39.06 in 2020 (AR 1806), 37.5 in 2019 (AR 2281), 36.52 in 2018 (AR 2247), 37.34 in 2017 (AR 2575), 40.01 in 2016 (AR 2570), 39.55 in 2015 (AR 2542), 40.2 in 2014 (AR 2509), and 40.25 in 2013 (AR 2496). The diagnosis of

8

obesity is also readily apparent throughout the record, together with objective medical evidence of obesity. (*See, e.g.*, 109, 118, 130, 142, 2247, 2281, 2507, 2540, 2546). Yet, despite the plethora of evidence pertaining to Lothridge's obesity in the record, the ALJ inexplicably fails to mention any of it. In fact, there is no discussion in the decision indicating that the ALJ ever considered Lothridge's obesity. That is, the ALJ did not find whether obesity was a severe, versus non-severe, impairment at step two. (*See* AR 1693).The ALJ did not address obesity when considering whether Lothridge's combination of impairments met or equaled a listing at step three. (*See* AR 1693-96). Nor did the ALJ explain how Lothridge's obesity did, or did not, impact her severe impairments of fibromyalgia, myalgias or arthralgias, COPD, degenerative disc disease, asthma, and various mental health conditions in combination when assigning the RFC. (*See* AR 1697-1713).

As such, the ALJ's rather glaring omission of any discussion of Lothridge's obesity does not comply with the Commissioner's own guidance set forth in SSR 19-2p. *See Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999) (explaining that while SSRs do not have the force of law, they are "binding on all components of the Social Security Administration" (citing 20 C.F.R. § 402.35(b)(1)); *Nanette P. v. Berryhill*, No. 1:17-cv-01960-TWP-DLP, 2018 WL 6249936, at *4 n.2 (S.D. Ind. Nov. 29, 2018) (same). This is puzzling given that the state agency physicians who reviewed Lothridge's record in 2013 and 2014, and whose opinions upon which the ALJ relied in part (*see* AR 1710), concluded that her obesity was a severe impairment (AR 109, 118, 130, 142).

The Commissioner does not dispute that the ALJ failed to discuss Lothridge's obesity. (ECF 23 at 3-5). The Commissioner, rather, essentially asserts that the omission is a harmless error because "the ALJ in both of [Lothridge's] two previous decisions found her obesity to be a

9

severe impairment . . . . [and] the RFC determination in each of those decisions is fully consistent with the ALJ's RFC determination in this case . . . ." (*Id.* at 3); *see generally Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (explaining that harmless errors are those that do not ultimately impact the outcome of the determination).

This assertion offered by the Commissioner's lawyers is impermissible *post hoc* argument. "[T]he court's review is confined to the rationales offered by the ALJ; it may not affirm based on post-hoc justifications provided by the Commissioner's lawyers." *Hunt v. Astrue*, 889 F. Supp. 2d 1129, 1133 (E.D. Wis. 2012) (citations omitted). And even if it were not *post hoc*, the Commissioner's argument is unconvincing. "[A]n ALJ must consider all of the evidence and must explain its decision such that it may be meaningfully reviewed." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (citations omitted). "If the ALJ thought that [Lothridge's] obesity ha[d] not resulted in [additional] limitations on her ability to work, he should have explained how he reached that conclusion." *Id.*

Having said that, the Seventh Circuit has found on several occasions that "an ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work." *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (quoting *Dornseif v. Astrue*, 499 F. App'x 598, 600 (7th Cir. 2013)); *see also Rennaker v. Saul*, 820 F. App'x 474, 481 (7th Cir. 2020). In that vein, the Commissioner argues that Lothridge "simply speculates" that her limitations would be exacerbated by her obesity but "provides no substantive evidentiary basis for this assertion." (ECF 23 at 5 (citing ECF 20 at 12)). That is, the Commissioner contends that "[the] evidence does not reference actual functional limitations that the ALJ ignored or otherwise failed to incorporate." (*Id.*).

Not so. To explain, the ALJ assigned "some" weight to the opinions of the state agency

10

physicians who reviewed Lothridge's record in October 2013 and on reconsideration in February 2014. (AR 1710 (citing AR 105-22, 125-48)). These physicians—who found that Lothridge's obesity was a severe impairment (AR 109, 118, 130, 142))—opined that Lothridge could lift ten pounds frequently and twenty pounds occasionally; stand or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; frequently balance; occasionally stoop, kneel, crouch, crawl, and climb stairs, but never climbing ladders or scaffolds; and "*[m]ust periodically alternate sitting and standing to relieve pain and discomfort*" (AR 110-11, 119-20, 131-32, 143-44 (emphasis added)). The ALJ, however, overlooked or ignored this sit-to-stand option included in these state agency physicians' opinions when the ALJ assigned the RFC. Thus, contrary to the Commissioner's assertion, there *is* evidence of record to support additional physical limitations that the ALJ failed to address.

An additional note about harmless error with respect to obesity. The Seventh Circuit has also stated that a failure to explicitly discuss obesity may be harmless error if the ALJ "indirectly took obesity into account by adopting limitations suggested by physicians who were aware of or discussed [the claimant's] obesity." *Arnett*, 676 F.3d at 593 (citations omitted); *see also Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006). For example, in *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004), the ALJ did not specifically mention the claimant's obesity but did adopt the limitations opined by the specialists and reviewing physicians who were aware of the condition. The Seventh Circuit concluded that the ALJ's adoption of those physicians' opinions, together with the claimant's failure to specify how his obesity further impaired his ability to work, made the error harmless because the claimant's obesity "was factored indirectly into the ALJ's decision as part of the doctors' opinions." *Id.*; *see also Prochaska*, 454 F.3d at 736-37.

Here, as already explained, the ALJ did not adopt all of the limitations assigned by the state agency physicians who explicitly considered Lothridge's obesity in 2013 and 2014. Rather, the ALJ overlooked or ignored the sit-to-stand option included in these physicians' opinions.[5] As such, the ALJ's omission of any discussion of Lothridge's obesity cannot be overlooked as mere harmless error in this instance. Consequently, the case will be remanded to the Commissioner for purposes of evaluating Lothridge's obesity in combination with her other impairments and its effect on the RFC in accordance with SSR 19-2p.[6]

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Lothridge and against the Commissioner.

SO ORDERED.

Entered this 25th day of September 2023.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[5] There is an additional opinion of record from a state agency physician who reviewed Lothridge's record in 2019 which does not contain a sit-to-stand option. (AR 1852-66). However, there is no indication from the opinion whether this physician was aware of Lothridge's obesity. (*Id.*). Nor does the ALJ acknowledge or discuss this 2019 opinion or explain what weight, if any, he applied to it. (*See* AR 1710-12). Consequently, this 2019 opinion does not remedy the ALJ's failure to address Lothridge's obesity in his decision.

[6] Because a remand is warranted based on the ALJ's failure to consider Lothridge's obesity, the Court need not reach Lothridge's remaining argument challenging the ALJ's step-five finding.